IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS LLC, | § | |
| *Plaintiff* | § | |
| | § | **W-20-CV-00454-ADA** |
| | § | **W-20-CV-00457-ADA** |
| | § | **W-20-CV-00460-ADA** |
| -vs- | § | **W-20-CV-00461-ADA** |
| | § | **W-20-CV-00463-ADA** |
| | § | **W-20-CV-00464-ADA** |
| | § | **W-20-CV-00465-ADA** |
| | § | |
| MICROSOFT CORPORATION, | § | |
| *Defendant* | § | |

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT MICROSOFT CORPORATION'S MOTION FOR RECONSIDERATION**

Before the Court is Defendant Microsoft Corporation's ("Microsoft") Motion for Reconsideration of its Motion to Transfer Venue to Austin Division. ECF No. 123.[1] Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development's ("Brazos") Opposition to Defendant's Motion was timely filed in response. ECF No. 126. Microsoft filed a reply (ECF No. 130), and Brazos a sur-reply (ECF No. 147). Having considered all the relevant briefing, the Court **DENIES** Microsoft's Motion.

## I.     BACKGROUND

Brazos filed suit against Microsoft on June 2, 2020. ECF No. 1. On October 2, 2020, Microsoft sought transfer to the Austin Division of the Western District of Texas. ECF No. 31. Microsoft argued that the sources of proof, willing witness, practical problems, and local interest factors favored transfer. Per Microsoft, all other factors were neutral. On April 7, 2021, the Court

---

[1] All references to "ECF No." correspond to docket entries in No. 6:20-cv-00454, the first-listed case in the caption above. The docket entry number for the motion for reconsideration in the remaining cases is as follows: No. 6:20-cv-457, ECF No. 98; No. 6:20-cv-460, ECF No. 114; No. 6:20-cv-461, ECF No. 111; No. 6:20-cv-463, ECF No. 101; No. 6:20-cv-464, ECF No. 113; No. 6:20-cv-465, ECF No. 108.

denied Microsoft's motion. ECF No. 74. Ultimately, this Court found that the sources of proof, willing witness, administrative difficulties, and local interest factors weighed against transfer to one degree or another. Having failed to meet the requisite burden, the Court denied Microsoft's request. More than eleven months later, on March 18, 2022, and on the eve of dispositive motion briefing with only three months to trial, Microsoft seeks transfer to the Austin Division. ECF No. 123. The Motion has been fully briefed and is ripe for review.

## II.     LEGAL STANDARD

### A.     Motions for Reconsideration under Rules 59(e) and 54(b)

Under Federal Rule of Civil Procedure 59(e), courts may reconsider prior rulings based upon "(a) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

Rule 54(b) of the Federal Rules of Civil Procedure states "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, under Rule 54(b), the Court can reverse an interlocutory order, such as an order on a motion to transfer venue, "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Kroger*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). In comparison to Rule 59(e), Rule 54(b)'s approach is intended to reflect the "inherent power of the rendering district court to afford such relief from interlocutory judgments

as justice requires." *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). Still:

> So long as courts recognize that they have the discretion to grant reconsideration even in the absence of any such showing, the flexible approach permits them to require a showing of one of the following factors to justify reconsideration: an intervening change in law; availability of previously unavailable new evidence; or a need to correct a clear legal error or to prevent manifest injustice.

*United States v. 89.9270303 Bitcoins*, No. SA-18-CV-0998-JKP, 2021 WL 5203337, at *1 (W.D. Tex. Nov. 8, 2021) (internal quotation marks omitted); *see also S.L.V. v. Rosen*, No. SA-21-CV-0017-JKP, 2021 WL 243442, at *5 (W.D. Tex. Jan. 25, 2021) (same). "Thus, even though the standard for evaluating a motion to reconsider under Rule 54(b) is 'less exacting than that imposed by Rules 59 and 60 . . . considerations similar to those under Rules 59 and 60 inform the Court's analysis.'" *Turk v. Pershing LLC*, No. 3:09-CV-2199-N, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019) (quoting *Rotella v. Mid-Continent Cas. Co.*, 2010 WL 1330449, at *5 (N.D. Tex. Apr. 5, 2010)). Ultimately, the critical inquiry is whether justice requires relief from the interlocutory order. *Kroger*, 864 F.3d at 337.

The more flexible approach under Rule 54(b) to reviewing motions for reconsideration should not lead to such motions automatically being granted. Otherwise, motions for reconsideration become constant reassessments of the Court's work. *See Turk v. Pershing¸* 2019 WL 13074701, at *1 ("[A] district court's broad discretion under rule 54(b) must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.").

### B.      Intra-District Motion to Transfer Venue under § 1404

Motions to transfer patent cases are governed by regional circuit law. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). A party seeking transfer "should not delay filing" and must act with "reasonable promptness." *In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). Otherwise, "the court [will] expend time and effort that might become wasted upon transfer." *Wyeth,* 406 F. App'x at 477.

In the Fifth Circuit, the § 1404(a) factors apply to both inter-district and intra-district transfers. *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). It is commonly understood that trial courts have even greater discretion in granting intra-district transfers than they do in the case of inter-district transfers. *See*, *e.g.*, *Sundell v. Cisco Systems Inc.*, No. 96-41191, 1997 WL 156824, at *1 (5th Cir. 1997) ("Under 28 U.S.C. § 1404(b), the district court has broad discretion in deciding whether to transfer a civil action from a division in which it is pending to any other division in the same district."). *Compare Liles v. TH Healthcare, Ltd.,* No. 2:11–cv–528–JRG, 2012 WL 3930616, at *6 (E.D. Tex. Sept. 10, 2012) ("[C]ourts in this district view 1404(a) motions for intra-district transfer of venue with heightened caution."), *Madden v. City of Will Point, Tex.,* No. 2:09–CV–250 (TJW), 2009 WL 5061837, at *3 (E.D. Tex. Dec. 15, 2009) (opining that "greater deference [is] available to [district courts] when considering intra-district transfers"), *and Rios v. Scott,* No. 1:02–CV–136, 2002 WL 32075775, at *4 (E.D. Tex. Jul. 13, 2002) ("[T]rial courts should entertain Section 1404(a) motions for intra-district change of venue with caution, and should not grant the requested relief unless the balancing of convenience and public interest factors results in a firm conclusion that the proposed new venue is decidedly more convenient and in the interest of justice."), *with Cantrell v. City of Murphy,* No. 6:09–cv–225,

2010 WL 786591, at *2 (E.D. Tex. Mar. 1, 2010)  ("The § 1404(a) analysis remains the same regardless of whether the party moves for an inter-district or intra-district transfer.").

Section 1404(a) provides that, for the convenience of parties, witnesses and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *VanDusen v. Barrack*, 376 U.S. 612, 622 (1964)). A motion for transfer, whether intra- or inter-district, involves a two-step analysis: (1) whether the case could have been properly brought in the forum to which transfer is sought and (2) whether transfer would promote the interest of justice and/or convenience of the parties and witnesses. *Radmax*, 720 F.3d at 288; *see also In re Volkswagen of America, Inc.*, 545 F.3d 304, 312, 314 (5th Cir. 2004) (en banc) (hereinafter *Volkswagen II*).

The Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *see also Radmax*, 720 F.3d at 290 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter *Volkswagen I* (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6

(1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–15.

## III.   ANALYSIS

Microsoft's initial motion sought this Court's reconsideration purely under Rule 59(e) of the Federal Rules of Civil Procedure. Defendant never mentioned Rule 54(b) in its initial motion. In its motion, Microsoft cites to *Benjamin Moore* for the proper legal standard of "an intervening change in controlling law." ECF No. 123 at 8 (citing *Benjamin Moore*, 318 F.3d at 629). Yet, immediately thereafter, Microsoft changes the standard to a "clarification of controlling law." *Id.* Brazos immediately identified the discrepancy in its response, arguing that "[i]t is unsurprising that Microsoft refers to a 'clarification of controlling law,' *see* Mot. For Recons. at 1, 8, rather than using the correct legal standard: an 'intervening change in controlling law,' *Benjamin Moore*, 318 F.3d at 629." ECF No. 126 at 6. In reply, Microsoft cited an entirely new case, *Austin v. Kroger Tex., L.P.*, to advocate for a liberal Rule 54(b) standard that, at the very least,

encompasses "clarification[s] of substantive law." ECF No. 130 at 1–2 (citing *Kroger,* 864 F.3d at 336).

Whether intentional or by mistake, Microsoft's sudden shift is improper. Parties are not free to argue under a legal standard in an initial motion, only to supersede the argument with a more liberal legal standard on reply. However, because the newly requested legal basis is the correct legal standard, *see Kroger*, 864 F.3d at 336 ("Rule 59(e) governs motions to alter or amend a final judgment; Rule 54(b) allows parties to seek reconsideration of interlocutory orders. . ."), and makes no impact on the ultimate result, the Court addresses the motion under the more lenient Rule 54(b) standard.

At the outset, the Court notes that Microsoft's motion is untimely. Next, Microsoft fails to show an intervening change in controlling law, the availability of new evidence not previously available, or a need to correct a clear error of law or prevent manifest injustice. Additionally, even under a more liberal rule 54(b) standard, the Court remains unpersuaded that transfer to the Austin Division is clearly more convenient and necessary to achieve justice. Having reviewed each of the factors under the original and "updated" briefing, the Court notes that Microsoft merely disagrees with the Court's rulings on issues decided nearly a year before. Defendant's late attempt to take a second bite at the apple is meritless and should not disturb the parties' or Court's efforts in timely bringing this case to a resolution.

### A.    The Motion for Reconsideration is Untimely

Preliminarily, the Court finds Microsoft's motion for reconsideration to be untimely. While Rule 54(b) does not establish any time limit on seeking reconsideration other than before a final judgment, "parties seeking a change of venue should act with 'reasonable promptness.'" *Peteet*, 868 F.2d at 1436. Courts consider a party's delay in denying a motion to transfer. *Id.*

While Microsoft timely moved to transfer this case in the first instance, its delay in seeking reconsideration is unwarranted. This Court denied Microsoft's motion to transfer on April 7, 2021. ECF No. 74. More than eleven months later, on March 18, 2022, Microsoft seeks reconsideration. ECF No. 123. But the basis for Microsoft's motion is on "clarifications of controlling law" or revelations in discovery that Brazos overstated its alleged connections to Waco.

As noted below, none of the "clarifications in the controlling law" dictate a reversal of the Court's prior order upon reconsideration. And, even if Microsoft viewed the opinions to which it cites as clarifying the controlling law, it should have promptly sought reconsideration. Microsoft waited more than four months after the most recent cases from this district. Additionally, Microsoft waited approximately five months after discovering Brazos's "declared 'deep roots' in Waco [were] nothing more than a litigation-inspired façade." ECF No. 123 at 5. Microsoft's motion largely hinges on the characterization of Brazos, its ties to Waco, the sources of proof, and relevant witnesses. Despite "uncovering" said information in the fall of 2021, Microsoft waited until the spring of 2022 to seek reconsideration of the Court's order. Microsoft should have been alerted even sooner, given the Federal Circuit's language in *Juniper*, a case to which Microsoft amply cites in its motion to reconsider. In that case, the Federal Circuit stated that "Brazos's presence in the Western District of Texas is insubstantial compared to the presence of Juniper in the Northern District of California. Moreover, it appears that the relationship between the Texas forum and Brazos is merely the product of pursuing litigation in a preferred forum and is entitled to little weight." *In re Juniper*, 14 F.4th 1313, 1320–21 (Fed. Cir. 2021). Such language did not constitute a change in controlling law, but certainly noted a

difference in discretionary review between this Court and the Federal Circuit. Microsoft could have promptly urged this Court to reconsider. Instead, it waited until three months before trial.

In the meantime, this Court held a *Markman*, completed fact discovery, oversaw the exchange of expert reports and rebuttal reports, expert depositions have taken place, and resolved numerous discovery disputes. *See* ECF Nos. 42, 69, 87, 98, 105; *see also In re Lab. Corp. of Am. Holdings*, No. 2022-127, 2022 WL 1498775, at *2 (Fed. Cir. May 12, 2022) (denying petition for mandamus and noting "the court invested considerable resources conducting a *Markman* hearing, issuing its claim construction order, and presiding over discovery"). Upon filing the motion to reconsider, the parties were days away from dispositive motion briefing and a mere three months from the scheduled trial date. Such a delay creates avoidable complications and will inevitably delay the trial. This Court recently transferred several cases to the Austin Division. Upon transfer, the cases remain either unopened or were immediately stayed until further order of the court. *See infra* Part III.C.2.a (collecting cases).

Microsoft places the blame for its delay squarely on Brazos, arguing it is a "direct consequence of [Brazos's] unusual and languid prosecution of these cases." ECF No. 123 at 2. More specifically, Microsoft contends that any consequential delay is a product of Brazos's "exaggerations as to its connections to the Waco forum, . . . and [Brazos's] ever-shifting infringement theories and accused products that continuously altered the scope of the case." ECF No. 130 at 2–3. Microsoft's attempt to "burden shift" any delay to Brazos is of no moment. First, the parties continue to argue about the "exaggerated connections" between Brazos and Waco, but any alleged differences of opinion concerning such connections were discovered in the fall of 2021, several months before Microsoft filed the motion for reconsideration. And, regarding the "shifting" accused products, Microsoft points to no witnesses that now reside in Texas given the

changes. The calculus from the prior order remains unchanged. Thus, Brazos's alleged delay makes no difference to the analysis.

Microsoft's failure to promptly seek reconsideration of the transfer order should not be rewarded. *See In re Lab. Corp.*, 2022 WL 1498775, at *2 (finding "the district court plausibly concluded that LabCorp failed to seek transfer with reasonable promptness"); *Wyeth*, 406 F. App'x at 477 ("Without reasonable promptness on the part of the movant, a case proceeds, requiring the court to expend time and effort that might become wasted upon transfer."); *Peteet*, 868 F.2d at 1436 ("Parties seeking a change of venue should act with reasonable promptness."); *Bianco v. Globus Med., Inc.*, No. 2:12-CV-147-WCB, 2014 WL 61071, at *4 (E.D. Tex. Jan. 6, 2014) ("There is no suggestion that the two grounds on which [defendant's] motion for reconsideration is actually based . . . arose only within the last several days or weeks. In short, nothing happened on or after [the decision prompting reconsideration], that gave [defendant] an excuse for seeking reconsideration of its original transfer motion 14 months after the original order denying transfer, and less than two weeks before trial."). In sum, Microsoft's long delay in filing the motion for reconsideration sufficiently warrants denial of the motion alone. Coupled with the Court's remaining analysis, Microsoft's motion must be denied.

### B.    Motion for Reconsideration Under Rule 54(b)

While Rule 54(b) permits a Court to reverse itself for any reason it deems sufficient, the same factors for Rule 59(e) may be required as "the absence of such a showing would exhibit no injustice to denying reconsideration." *United States v. 89.9270303 Bitcoins*, 2021 WL 5203337, at *1; *see also Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 380 (N.D. Tex. 2020) (explaining that the "guideposts [provided under Federal Rules of Civil Procedure 59 and 60] are informative to the Court's reconsideration of a pre-final-judgment

order"); *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 481 (N.D. Tex. 2016) ("Even though the standard for evaluating a motion to reconsider under Rule 54(b) would appear to be less exacting than that imposed by Rules 59 and 60, considerations similar to those under Rules 59 and 60 inform the court's analysis.") (cleaned up). Otherwise, motions for reconsideration would simply become vehicles "for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). The Court will first look to each of the Rule 59 factors that guide the Court's Rule 54(b) analysis, followed by another discretionary review of the § 1404(a) factors.

### 1.   *Microsoft cannot point to an intervening change in controlling law*

Under Rule 59(e), Microsoft must demonstrate an intervening change in controlling law. *See Benjamin Moore*, 318 F.3d at 629; *see also Kroger*, 864 F.3d at 336. Microsoft argues that "[t]he Federal Circuit recently heightened its effort to achieve uniform application of 28 U.S.C. § 1404 across all District Courts." ECF No. 123 at 9. But recent opinions from the Federal Circuit have not brought about intervening changes in the controlling law. This Court squarely addressed this issue in *Ravgen, Inc. v. Lab. Corp. of America Holdings*:

> [T]he Federal Circuit opinions that provided a "new calculus," per [defendant], cite back to prior opinions to illustrate that such a calculus was *not* new. *See, e.g., In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757, at *2 n.3 (Fed. Cir. Nov. 10, 2021) ("[W]e have repeatedly said...."); *id.* at *3 ("[W]e have repeatedly explained...."); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804 at *3, 2021 U.S. App. LEXIS 33788 at *10 (Fed. Cir. Nov. 15, 2021) ("We have repeatedly held...."); *id.* at *4, 2021 U.S. App. LEXIS 33788, at *10 ("But we have repeatedly...."); *id.* at *5, 2021 U.S. App. LEXIS 33788, at *14 ("We have repeatedly rejected...."); *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268 at *3, 2021 U.S. App. LEXIS 33790 at *9 (Fed. Cir. Nov. 15, 2021) ("[W]hich we have repeatedly explained....").

No. W-20-CV-00969-ADA, 2022 WL 272115, at *2 (W.D. Tex. Jan. 28, 2022). The Federal Circuit did not opine otherwise. *See In re Lab Corp.*, 2022 WL 1498775, at *2 ("The district

court further found that *Quest* and the other decisions of this court that [defendant] relied on to warrant allowing its belated transfer request merely applied existing law, and thus [defendant] could have made those same arguments in a timely motion, but failed to do so. We do not see any basis to disturb those findings on mandamus.").

Microsoft vaguely alleges that the Federal Circuit's efforts clarified controlling law; however, Microsoft fails to point to specific errors this Court made with particularity. Instead, Defendant simply rehashes prior arguments with new citations. Microsoft does not cite a single case that became available since this Court's prior denial of the motion to transfer that presents novel arguments or intervening changes in controlling law. That recent opinions from the Federal Circuit have not constituted intervening changes in the controlling law—elucidated in *Ravgen* and *In re Laboratory Corp. of America*—bears repeating, at least because Microsoft struggles against it. The Court, therefore, addresses each of Microsoft's opinions in turn, based on the order in which they were filed.

First, Microsoft cites to *In re Juniper Networks, Inc.,* 14 F.4th 1313, for the proposition that documents moved "for litigation purposes are of no relevance in deciding the transfer issue and should not be given weight in the convenience analysis." ECF No. 123 at 11. Such instruction was not an intervening change in the law, but the Federal Circuit's reiteration of *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Defendant's own citation to *In re Juniper*, ECF No. 123 at 11, illustrates the instruction was not new; it notes *Juniper* cited to *In re Hoffmann-La Roche*. Microsoft also cites to *Juniper* to show that "failure to timely prosecute these cases . . . further demonstrates that rapid disposition of the case is not 'worthy of important weight.'" ECF No. 123 at 14. But that statement cites to *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011), wherein the Federal Circuit minimized the importance of the

speed to trial, stating that "[plaintiff] acknowledges it does not make or sell any product that practices the claimed invention [and] therefore is not in need of a quick resolution of this case because its position in the market is threatened."

Second, Microsoft relies on *In re Google*, No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021), to discuss the relevance of time in conjunction with the 100-mile rule. ECF No. 123 at 11. But both the Federal Circuit and Fifth Circuit have been cited for the same discussion before. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (stating that the 100-mile rule should not be rigidly applied to provide more weight to witnesses outside both forums than to those in the transferee forum); *see also Volkswagen I*, 371 F.3d at 205 (stating the 100-mile rule and finding that additional travel time increases the probability of increased travel time and time away from home). The Federal Circuit itself acknowledges that its prior opinions have been mindful of the rationale for this rule. *See Google*, 2021 WL 4427899, at *4 (citing *Genentech*, 566 F.3d at 1344).

Third, Microsoft states that "[r]elative inconvenience where party witnesses still must travel for trial still outweighs speed to trial." ECF No. 123 at 9 (citing *In re Apple*, No. 2021-187, 2021 WL 4485016, at *2 (Fed. Cir. Oct. 1, 2021)). Again, this proposition is not new. The Federal Circuit cited to its own prior precedent, stating: "*But as we have said previously*, this factor is the 'most speculative' of the factors bearing on transfer and 'should not alone outweigh all . . . other factors.'" *In re Apple Inc.*, 2021 WL 4485016, at *2 (emphasis added) (quoting *Genentech*, 566 F.3d at 1347).

The fourth case cited by Microsoft is *In re Google LLC*, No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021). Again, Microsoft relies on the case for the time versus distance analysis of the convenience of willing witnesses factor, providing the following quote:

"Although the district court emphasized that Mr. Morris would have not have to travel as far from his home in Georgia to reach Waco than to reach the Northern District of California, the difference in distance is not as importance as the difference in travel time and the fact that the witness would be required to be away from home for several days in any event." ECF No. 123 at 12. But that statement immediately preceded a citation to the Federal Circuit's order on September 27, 2021 in *Google*, 2021 WL 4427899, at *4, wherein it made the same statement and relied on *Genentech* and *Volkswagen I*, as noted above.

Fifth, Microsoft quotes *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021), stating "[t]he Fifth Circuit has stated that the convenience of the witnesses is best served if the court can 'minimize the time when [witnesses] are removed from their regular work or home responsibilities.'" ECF No. 123 at 11–12. That is a direct quote from *Volkswagen I*, as is evident in the Federal Circuit's opinion and Microsoft's briefing. *See In re NetScout*, 2021 WL 4771756, at *3; ECF No. 123 at 12.

Sixth, Microsoft cites to *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *5 (Fed. Cir. Oct. 13, 2021), for the proposition that the 100-mile rule should not be rigidly applied when witnesses are required to travel a significant distance no matter where they testify. But the *Pandora* opinion bolsters that proposition by citing to an example from its November 9, 2020 opinion, *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020). And, again, the *Genentech* and *Volkswagen I* opinions stand for the same proposition.

*In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021), is also cited as support for Microsoft's arguments regarding the relevance of time under the convenience of the willing witnesses factor. ECF No. 123 at 12. Again, the opinion cites back

to the *Google* opinion from September 27, 2021, 2021 WL 4427899, which stems from the *Genentech* and *Volkswagen I* opinions predating this Court's order denying transfer.

Of the remaining two cases, Microsoft suggests that *In re Google LLC*, No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021), is the first articulation of the principle that "[f]aster time to trial cannot override the convenience of the accused infringer's party witnesses." ECF No. 123 at 9. But, again, the Federal Circuit's opinion cited to *Genentech*, 566 F.3d at 1347, and *Apple*, 979 F.3d at 1344 n.5, for this proposition.

Last, Microsoft cites to *In re Netflix*, No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022), to show that the convenience of witnesses is probably the most important factor in transfer analysis. ECF No. 123 at 9, 11, 13. As can be expected, that point is a direct quote of *Juniper*, which also quotes *Genentech*.

This march through precedent, performed again for Microsoft's benefit, exhibits that no intervening change in law occurred since this Court's order denying Microsoft's initial motion to transfer venue. Instead, if anything, Microsoft's argument highlights the fact that it waited several months to bring the alleged changes in intervening law to the Court's attention for timely resolution. Moreover, the Court finds nothing persuasive in Microsoft's briefing that illustrates the "Federal Circuit recently heightened its effort to achieve uniform application" of the transfer factors worthy of disturbing the Court's prior order. *See* ECF No. 123 at 9. Quite the opposite, in fact. This timing suggests that Microsoft's intervening-changes-in-law argument is disingenuous.

### 2. *Microsoft fails to identify new evidence not previously available*

Microsoft argues that Brazos's prior declaration "did not portray an accurate picture of" Brazos. ECF No. 123 at 1–2. First, Microsoft argues that "Plaintiff's connections to Waco were constructed for this litigation and are superficial, at best." *Id.* at 3. Second, Brazos delivered its documents to Waco after the litigation was filed. *Id.* at 4. Third, the declarant, Mr. Hogan,

testified that he moved to Waco immediately before the filing of the cases, is not involved in Brazos's patent acquisition process, and did not know if he would testify or even attend trial. *Id.* at 5. Additionally, Microsoft characterizes his aspirations to connect with Waco as "aspirational." *Id.*

Brazos contends that Microsoft relies on exhibits included with its original motion to transfer and deposition testimony of the managing director, chairman, and president of Brazos. ECF No. 126 at 4. Hence, "[i]nformation in Microsoft's exhibits to its original motion is not 'new evidence not previously available.'" *Id.*

At the outset, the Court notes that Microsoft's complaints regarding venue evidence could have been resolved had it conducted venue discovery. It chose not to do so. Having lost the motion, it cannot now point to old evidence that it has since developed to illustrate a change in evidence. If the Court were to permit this practice, parties would simply file premature motions only to later develop the facts and seek reconsideration. Microsoft's decision to forego venue discovery carries consequences; ones that Microsoft should bear instead of the Court. *See Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) ("the court should not grant the motion absent some showing that the evidence was not *available* during the pendency of the motion.") (emphasis added); *see also Engelhard Indus. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963), cert. denied, 377 U.S. 923 (1964) (on a motion to reconsider a party is "obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not have discovered and produced such evidence at the hearing.").

Microsoft similarly makes hay over the fact that two of Brazos's witnesses are coming from Los Angeles and Hawaii. *See* ECF No. 123 at 13. But Microsoft made the very same argument in its original motion to transfer venue. *See* ECF No. 31 at 10–11. Microsoft did not

learn of a new location of the proposed witnesses. Instead, Microsoft simply asks this Court to rehash details contained in the original briefs.

### 3. There is no need to correct a clear error of law or prevent manifest injustice.

No clear error of law exists, nor does Microsoft point to any. Nor does Microsoft claim a manifest injustice—because it cannot. Waco is less than 100 miles from Austin. It is an easy 90-minute drive. Microsoft cannot claim any real harm, because none exists. As noted below, an analysis of the § 1404 factors indicates that even reviewing Microsoft's reasoning anew, this case should not be transferred to the Austin division, particularly at this juncture.

### C. Motion for Transfer under § 1404(a)

For reasons similar to that of the original order denying transfer, the Court's reasoning and findings remain largely undisturbed. In fact, contrary to Microsoft's hopes, some factors now weigh more strongly against transfer. As a threshold matter, neither party disputes that the Austin Division is a proper forum. The Court finds that this suit could have been filed in the Austin Division.

### 1. The Private Interest Factors

#### a.   The Relative Ease of Access to Sources of Proof

In considering the ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. "[T]he question is *relative* ease of access, not *absolute* ease of access." *Radmax*, 720 F.3d at 288 (emphases in original).

Microsoft argues that this factor favors transfer because discovery has shown that "access to sources of proof is *relatively* easier in Austin than in Waco." ECF No. 123 at 11. Specifically, Microsoft argues that Brazos's documents were moved to Waco for litigation purposes and

should be given little to no relevance. *Id.* (citing *Juniper*, 14 F.4th at 1320–21). Additionally, Microsoft notes that, at Brazos's request, "Microsoft transported its source code to Austin for inspection at a facility with suitable control and security." *Id.* at 10.

Brazos contends that the transportation of source code should not be given weight. Additionally, Brazos asserts that Microsoft wrongly states that discovery revealed none of the evidence is in the Waco Division. In fact, Brazos identifies that its servers are maintained and managed in Waco, and that physical documents, "including but not limited to, patent-related documents and records from the USPTO," are stored here. ECF No. 126 at 9.

Microsoft's argument is a non-starter. As Microsoft notes, "[d]iscovery revealed no relevant Microsoft documents in Texas." ECF No. 123 at 10. And that source code was transferred to Austin after litigation began simply indicates that Microsoft's sources of proof originated outside either forum. Microsoft cannot now point to the source code as a reason for transfer, particularly when it criticizes Brazos for moving documents to Waco for litigation purposes. *See In re Hoffman-La Roche*, 587 F.3d at 1336–37 (finding it a fiction that documents transferred to Texas for litigation purposes were "Texas" documents, and that absent transfer, they would have remained a source of proof in California); *see also* ECF No. 130 ("And any documents [Brazos] has in Waco were moved there only *after* litigation commenced. [Brazos] itself admits that post-litigation activities do not impact the § 1404(a) transfer factors and cannot transform Waco into a convenient forum. (citing *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'")") (emphasis in original) (citations omitted).[2] Furthermore, Microsoft's original motion stated that "any relevant Microsoft evidence is located in Redmond,

---

[2] Microsoft tries to distinguish this argument from the movement of its source code. Its argument is unavailing.

Washington." ECF No. 31 at 8. Microsoft then argued that the critical point was that no evidence was in the Waco Division; thus, the factor supported transfer. *Id.*

The Court's original order gave little weight to Brazos's vague declaration. *See* ECF No. 74 at 6 ("Simply stating that there are generalized documents in a certain location, without more, carries little weight . . . Nevertheless, the only somewhat identifiable documents between the two venues, [Brazos's] sources of proof, are in Waco."). This fact remains the same. As previously found by this Court, this factor weighs slightly against transfer.

> b.  The Availability of Compulsory Process to Secure the Attendance of Witnesses

Microsoft argues that this factor is neutral. ECF No. 123 at 15. Brazos disagrees, pointing to patent prosecutor Richard A. Mysliwiec, who is allegedly within the subpoena power of the Waco Division but not the Austin Division. ECF No. 126 at 9. The parties previously agreed that this factor was neutral. ECF No. 74 at 6. The Court agrees.

> c.  The Cost of Attendance and Convenience for Willing Witnesses

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *Google*, 2021

WL 4427899, at *4. In essence, the Federal Circuit has found that time away from an individual's home is a more important metric than distance. *Id.*

Microsoft concedes that "all Microsoft witnesses and all of WSOU's knowledgeable witnesses are located outside this District. As such, unlike the situation addressed by the Court on Microsoft's original motion, the potential witness list is limited, concrete, and comprised entirely by witnesses outside this Division, and indeed outside this District." ECF No. 123 at 11. Contrary to Microsoft's beliefs, this "development" does not cut in its favor. Microsoft essentially argues that because Waco does not allow for direct flights from all over the country, it will always be a more inconvenient forum. In support, Microsoft cites to a non-precedential Federal Circuit opinion that compares travel from the northeastern United States to California and Waco. *See Google*, 2021 WL 4427899, at *4. Those facts are distinctly different as relevant witnesses resided in the transferee forum. Moreover, the policy implications mitigate the efforts of federal courts situated in smaller cities in favor of transfer to those located in major cities under the guise of "convenience." *See Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1398 (S.D. Tex. 1992) ("Additionally, the Court again notes that Defendants' complaint that there is no commercial airline service to Galveston is entitled to little weight."). The Fifth Circuit has condoned transfers to forums away from a party's headquarters that are more than twice the distance between Waco and Austin. *See Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("This case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States. The minor inconvenience Exxon may suffer in having to litigate this case in Tyler—only 203 miles distant—rather than in Houston, can in no rational way support the notion of abuse of discretion."). As illustrated in *Jarvis* and a recent Fifth Circuit opinion, "some inconvenience is expected and acceptable." *Def. Distributed*

*v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Traveling a mere 90 minutes is not a substantial inconvenience for those witnesses coming from out of state, particularly given the Fifth Circuit's deference to a transfer twice as far as that between Waco and Austin when the party was removed from a forum encompassing its headquarters.

Time, under Federal Circuit opinions, only becomes a dominant factor over distance when a witness will "likely have to leave home for an extended period of time and incur travel, lodging, and related costs" regardless of venue. *Apple*, 979 F.3d at 1332. Here, the transferee venue contains *no witnesses*. Thus, almost all of the cases upon which Microsoft relies are inapposite, and the others actually cut against Microsoft's position. In *Apple*, the Federal Circuit mitigated the inconvenience in the difference between the Western District of Texas and the Northern District of California for witnesses flying from New York. *Id.* The Federal Circuit noted that the 100-mile rule should not be rigidly applied when witnesses are required to travel no matter where they testify. *Id.* Therefore, the "witnesses will only be slightly more inconvenienced by having to travel to California than to Texas." *Id.* (internal quotations omitted). The difference between Waco and Austin is significantly less than the difference between California and Texas. The Federal Circuit minimized any additional inconvenience in that case; here, it is virtually reduced to nil. *See also In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539–40 (Fed. Cir. 2021) (noting that the Court gave too much weight to witnesses that lived closer to the transferor forum but would have to travel regardless of the forum); *Quest*, 2021 WL 5230757, at *2 ("[E]ven though the physical distance from Maryland and New Jersey to the Central District of California is greater than the distance to Waco, the record does not show that the total travel time for out-of-district witnesses would be significantly different."); *Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time when they

are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour."). The commute from Austin to Waco is only an hour and a half, a feasible day trip. It is a drive this Court is intimately familiar with, and many from this area make the commute daily. For these witnesses, it is likely a round trip made only once. Again, any alleged inconvenience is incredibly small.

Microsoft further argues that travel to Austin is more convenient for witnesses coming from Seattle, Washington, Israel, and various locations in Eastern Europe because "the witnesses can work out of Microsoft's Austin facility and take advantage of private workspace, conference rooms, and IT services such as the corporate internet connection and private intranet." ECF No. 123 at 12. These are incredibly minor inconveniences, and rather fictional. On the other hand, Brazos's witnesses traveling from out of state would equally benefit for the use of Brazos's office space at its Waco headquarters.

The Court does not need to address the relevance of Brazos's proposed witnesses that reside within this forum because Microsoft's arguments do not move the needle. Whether this factor continues to weigh against transfer or is neutral makes no difference on this Court's decision to deny Microsoft's motion, as no factors weigh in favor of transfer. Additionally, the Court reiterates its prior statements, finding that any alleged convenience in saving driving time is countered by the increased costs of hotels in Austin compared to Waco. This factor, at best for Defendant upon reconsideration, would be neutral.

> d.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d

at 314. Because of the advanced stage of this case, considerations of judicial economy, including the ease, expense, and timeliness of trial weigh heavier and are less speculative than at the time of the original motion.

Microsoft states that no delay is expected to happen should the Court transfer the case, that rapid disposition is not important given the nature of Brazos's business, and that this factor should not outweigh the others alone—and yet, finds this factor *strongly weighs in favor of transfer*. ECF No. 123 at 14. At best, Microsoft's arguments alone would amount to a neutral finding.

Brazos points out that this "case is near the finish line." ECF No. 126 at 12. Trial is on the calendar for June 21, 2022, and the entire case proceeded in Waco without any inconveniences. *Id.* However, the prejudice of delay to Brazos "is significant." *Id.*

Indeed, any delay caused by transfer is not "garden-variety" delay. *See Radmax*, 720 F.3d at 289; *IBEW-NECA Sw. Health & Ben. Fund v. Duvall Elec., LLC*, No. 3:10-CV-1079-B, 2011 WL 711005, at *4 (N.D. Tex. Feb. 28, 2011) ("[T]ransferring the case will cause prejudice to the parties because key dates on the Scheduling Order, such as the dispositive motion deadline, which is two weeks away and the trial date, set in June, will be eliminated. Also, the Court finds that transferring the case at this stage of litigation will cause a duplication of efforts by this court and the transferee court as well as the parties."); *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134-JRG-RSP, 2017 WL 750290, at *9 (E.D. Tex. Feb. 27, 2017) ("[W]here the motion was not filed timely, the Court may consider the time and effort invested in the case before the motion was filed.").

In the Court's original order, this factor favored transfer. The Court finds no errors in its analysis worthy of reconsideration. Having conducted the *Markman*, numerous discovery

hearings, and after investing extensive time and effort into the case, this factor now weighs strongly against transfer. It is absurd to think that transfer at this stage of the case will result in nothing more than "garden variety" delay. While that may be true of a case in its infancy, and upon a timely filed motion to transfer venue, it cannot be said in this instance. Under these circumstances, this factor alone can warrant denial of transfer. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) ("That is not to say that judicial economy can never dominate the court's transfer analysis. As we have previously observed, it can play a significant role."); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346–47 (Fed. Cir. 2010) (denying a petition for mandamus despite witnesses and sources of proof in the transferee venue due to the Court's familiarity with the patent and underlying technology from prior litigation).

### 2. *The Public Interest Factors*

#### a. <u>Administrative Difficulties Flowing from Court Congestion</u>

This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *Genentech*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* However, as a trial advances towards its trial date, such speculation is reduced and this factor's weight proportionally increases.

Microsoft argues that this factor is neutral. ECF No. 123 at 15. Brazos disagrees and fears that transfer will threaten to impact the time to trial of these cases. ECF No. 126 at 13. Additionally, Brazos notes that while the Federal Circuit has explained reliance on time-to-trial statistics *alone* makes this factor speculative and insufficient to warrant denying transfer, "there is nothing speculative about the conclusion that these cases will proceed to trial more quickly in the Waco Division at this stage." *Id.* at 14.

In the Court's original order denying transfer, it held that this factor weighed against transfer. Microsoft, in its original motion, also suggested that "no administrative difficulties flow[ed] from court congestion." ECF No. 31 at 15. Microsoft again takes the same position. Here, speculation surrounding the time to trial is significantly reduced. The Court set the -454, -461, and -465 cases for trial on June 21, 2022. The -460 and -464 cases are set for trial August 1, 2022, and the -457 and -463 cases are set for August 15, 2022. Indeed, trial dates may be speculative, but any shift in the trial date is generally caused by a joint request from the parties, or due to a conflict in the Court's schedule. When the latter occurs, the trial is reset for the next available date.

When Microsoft filed this motion, the trial dates were set. *See* ECF No. 116. After some juggling, two of the trial dates remain, with a third pushed back an extra two weeks to August 15, 2022. Speculation has subsided, and regardless, the trials are occurring a mere few months from the originally scheduled date pursuant to the parties' joint agreement. *See* ECF No. 109.

At the very least, noting that this motion was filed within three months of the scheduled trial date, it is a certainty that trial would be delayed upon transfer to the Austin Division. Transfer to the Austin Division requires no speculation, as cases previously transferred to that court either remain unassigned or were indefinitely stayed sua sponte without analysis. *See Charge Fusion Technologies LLC, v. Tesla, Inc.*, Case No. 1:22-cv-00488, ECF No. 42 (order granting stay until further order of the court); *Sonrai Memory Limited v. Dell Technologies, Inc.*, Case No. 1:22-cv-487, ECF No. 57 (same); *see also Corrino Holdings LLC v. Expedia, Inc., et al*, Case No. 6:20-cv-00309, ECF No. 72 (transferred on April 12, 2022, and yet to be opened or assigned to a judge in the Austin Division); *Ravgen, Inc., v. Natera, Inc., et al*, 1:20-cv-00692, ECF No. 246 (pending motion to set a trial date, noting all pretrial briefing was complete before

this Court transferred the case on November 12, 2021). On the other hand, maintenance in this forum allows the case to march towards its scheduled trial date, or very soon thereafter. Clearly, trial will occur in this forum faster than the proposed transferee forum.

Because speculation subsides over time and this motion was filed three months before the scheduled trial date, this factor now weighs heavily against transfer.

b.   <u>Local Interest in Having Localized Interests Decided at Home</u>

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence." *Bruck*, 30 F.4th at 435.

In Microsoft's briefing for the original motion to transfer venue, it stated that "Plaintiff's allegations regarding Microsoft's presence in the Austin Division strongly suggest that if there is a localized interest, Austin has more of an interest in deciding this case than Waco—which has none." ECF No. 31 at 14. The only tie Microsoft provides to Austin is that it employs 188 people in the Austin office. *Id.* Microsoft repeats the exact same arguments, including precisely the same citations.

Brazos credits the Court's prior analysis and requests that this Court's previous finding be left undisturbed. ECF No. 126 at 14. Brazos further argues that it maintains deep roots in the Waco community such that this factor weighs against transfer. *Id.* This Court previously found that this factor weighed against transfer, as the strongest factual connection between either venue was Brazos's headquarters in Waco.

26

Microsoft argues that Brazos maintains only a superficial local interest in Waco because "[Brazos] has yet to identify any witness from the Waco Division." Yet, Microsoft does the same, holding out that Austin maintains a local interest despite conceding that "[d]iscovery showed that all Microsoft witnesses and all of [Brazos's] knowledgeable witnesses are located outside this District." ECF No. 123 at 11. Microsoft's argument must apply to both sides. Most importantly, this factor "regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit*." *Apple*, 979 F.3d at 1345 (emphasis in original). Here, neither party points to connections between either venue that connect to events that gave rise to the suit. Instead, both parties point to a general presence in the respective forums.

Accordingly, upon review, this Court finds that the factor is neutral. However, such a change makes no difference in the result, and would not have changed the ultimate disposition of the original transfer motion.

<b>c.</b>   <u>All remaining factors are neutral</u>

The Court agrees that all remaining factors, including the familiarity of the forum with the law and conflict of laws are neutral.

### 3.   *The Austin Division is not a clearly more convenient forum*

"At the end of the day, § 1404(a) balances a number of case-specific factors, not just convenience. Further, § 1404(a) commits the balancing determination to the sound discretion of the trial court based not on per se rules but rather on an individualized, case-by-case consideration of convenience and fairness." *Vistaprint*, 628 F.3d at 1346. Here, having concluded that three factors weigh against transfer, five are at most neutral, and none weigh in favor of transfer, the Court finds that Microsoft fails to meet its burden, yet again, to show that the Austin Division is a clearly more convenient forum. Microsoft's underlying plea is that this

27

case would be more conveniently tried in a big city. But that is not the standard. As the Fifth

Circuit recently noted:

> When a defendant is haled into court, *some inconvenience is expected and acceptable*. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.

*Bruck*, 30 F.4th at 433 (emphasis added). For these reasons, Microsoft's motion for

reconsideration must be denied.

## IV.   CONCLUSION

For the reasons stated above, Defendant Microsoft Corporation's Motion for

Reconsideration of its Motion to Transfer Venue to Austin Division (ECF No. 123) is **DENIED**.

SIGNED this 9th day of June, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE